742 So.2d 87 (1999)
STATE of Louisiana, Appellant,
v.
Michael A. McDUFFY, Appellee.
No. 32,357-CA.
Court of Appeal of Louisiana, Second Circuit.
September 22, 1999.
Richard Ieyoub, Attorney General, Counsel for Appellant.
William R. Jones District Attorney, Kevin Holland, Asst. Dist. Atty., Counsel for Appellee.
Michael A. McDuffy, Appellee, in pro per.
Before BROWN, GASKINS and DREW, JJ.
GASKINS, J.
The State of Louisiana appeals from a trial court ruling refusing to enforce a foreign order for child support from the State of Georgia. For the following reasons, we reverse the trial court judgment.

FACTS
On August 30, 1996, a judgment was filed in a Georgia court granting a divorce between Rosa Marie McDuffy and Michael A. McDuffy. Mrs. McDuffy is domiciled in Georgia while Mr. McDuffy lives in Red River Parish in Louisiana. Mrs. McDuffy was granted the sole custody of the couple's *88 son, Michael A. McDuffy, Jr., born September 26, 1991. The judgment reflects that Mr. McDuffy's monthly income was $1,554.88 and, according to Georgia support guidelines, for one child, the support award was set at 20% of the defendant's monthly income, $311.00 per month. The child support award was due from September 16, 1996.
On April 9, 1997, the State of Georgia filed a verified statement for registration of a foreign order of support in Red River Parish. Red River Parish authorities notified Mr. McDuffy that Georgia had filed a request to register a foreign order of support. A rule to show cause was set for July 23, 1997. It is not clear what transpired on that date. The transcript before this court implies that some proceeding in this matter occurred prior to the hearing presently before this court for review. However, the minutes in the record reflect only a hearing on the rule to show cause held on March 25, 1998. The transcript before us for review is from the March hearing.
At the hearing in March 1998, Leta Brown, a Support Enforcement Specialist for the State of Louisiana, testified that according to her records, in September 1994, Louisiana received a URESA request from Georgia to enforce their order for child support against Mr. McDuffy regarding the minor child.[1] On October 14, 1994, Mr. McDuffy signed a stipulation for child support in the amount of $110.00 per month. The stipulation was signed in Red River Parish and approved by the assistant district attorney. Payments were to be made to the Department of Social Services, Support Enforcement Services, in Natchitoches, Louisiana. The trial court asked Ms. Brown if "this Court" set the child support amount at $110.00 or if that amount was set by a Georgia court. She replied, "I believe it was from their court. In other words, we were responding to their URESA petition to enforce their order. For $110." The State of Louisiana had been collecting that amount from the defendant's salary since that time. The defendant is an employee of the Red River Parish Sheriffs Office. In December 1996, the Louisiana authorities received the new request at issue here from Georgia for recognition of a child support award against Mr. McDuffy for his son.
At the March 1998 hearing, Mr. McDuffy stated that he was aware of the latest proceedings in Georgia, whereby his support obligation was set at $311.00, but he did not attend. He stated that he thought the Georgia award was obtained fraudulently but when questioned, did not say in what way the order was fraudulent. He also presented no proof to support his contention. Regarding the prior support judgment, Mr. McDuffy stated, "They sent it through the support office in Natchitoches, and they determined by the state guidelines here how much I could pay."
The trial court found that the Louisiana court had originally set the amount of child support to be paid against the defendant and found that it was a Louisiana consent judgment, even though Ms. Brown testified that it was a stipulation between the defendant and the State of Louisiana and that Mrs. McDuffy signed no consent judgment with the defendant. The trial court refused to recognize the present Georgia order. The court stated, "I think I ruled before that basically I felt that since the original order was established here in Louisiana, and that since any enforcement of non payment would be enforced here in Louisiana, that Mr. McDuffy would be put in jail or penalized here, that any increase in the prior order I felt like would need to be heard in Louisiana."
A judgment was filed April 2, 1998, refusing to enforce the Georgia support judgment. The court found that prior to the present Georgia child support order *89 for $311.00 per month, the Louisiana trial court rendered a stipulated order of child support under La. R.S. 46:236.7, signed October 14, 1994, and filed November 7, 1994, requiring the defendant to pay $110.00 per month in child support. Because a prior order for child support had been entered in Louisiana, the trial court refused to recognize the present Georgia judgment. The State appealed the trial court judgment.

RECOGNITION OF FOREIGN SUPPORT ORDER
On appeal, the State argues that the trial court erred in refusing to recognize and enforce the Georgia child support order. The State contends that all applicable procedures for enforcement of a foreign child support order were complied with in this case. The State argues that the party contesting the validity or enforcement of a registered order for support has the burden of proving his defense. According to the State, the defendant failed to carry his burden of proof. The State asserts that under the La. Ch. C. art. 1306.7, several defenses are set forth that the defendant could establish to defeat the enforcement of a foreign support enforcement order. In this case, the defendant simply stated that the Georgia order was fraudulently obtained, but offered no proof to support the claim. Then, according to the State, the trial court erroneously determined that the first order of support was established in Louisiana in 1994. The State asserts that the order was a stipulation in response to a request to the Louisiana Child Support Services from the State of Georgia. These arguments have merit.
It is not disputed that Georgia authorities and the State of Louisiana followed the necessary procedures for registration of the support award in this state, set forth in the Louisiana Children's Code. Also, under the Children's Code, the defendant had the burden of proof to establish a defense to the enforcement of the Georgia support order. At the time Georgia sought to enforce the present child support order, La. Ch. C. art. 1306.7[2] provided:
A. A party contesting the validity or enforcement of a registered order or seeking to vacate the registration has the burden of proving one or more of the following defenses:
(1) The issuing court lacked personal jurisdiction over the contesting party.
(2) The order was obtained by fraud.
(3) The order has been vacated, suspended, or modified by a later order.
(4) The issuing court has stayed the order pending appeal.
(5) There is a defense under the law of this state to the remedy sought.
(6) Full or partial payment has been made.
(7) The prescriptive period under Article 1306.4 precludes enforcement of some or all of the arrearages.
B. If a party presents evidence establishing a full or partial defense under Paragraph A of this Article, a court may stay enforcement of the registered order, continue the proceeding to permit production of additional relevant evidence, and issue other appropriate orders. An uncontested portion of the registered order may be enforced by all remedies available under the laws of this state.
C. If the contesting party does not establish a defense under Paragraph A of this Article to the validity or enforcement of the order, the registering court *90 shall issue an order confirming the order.
As asserted by the State, the defendant merely replied, in response to a question from the trial court, that he thought the Georgia child support judgment was obtained fraudulently. However, when asked, "How would that be?" he responded, "I have no idea, sir." The defendant presented no proof to substantiate his claim. Therefore, we find that the defendant failed to carry his burden of presenting a defense to enforcement of the Georgia child support judgment. Accordingly, under La. Ch. C. art. 1306.7(C), the Louisiana court was required to issue an order confirming the Georgia child support award.
We also find that the trial court erred in holding that the 1994 child support judgment prevented the court from enforcing the Georgia support judgment at issue here. The testimony in this record from the representative of the Department of Social Services shows that the stipulated child support award for $110.00, entered in October 1994, was made in response to a request from the State of Georgia to enforce an award of child support entered in that state. Although we do not have before us the prior request by the State of Georgia, it may be that the stipulated order was entered into in response to such a request. In such a case, the new support order at issue here was simply a subsequent order from Georgia and the trial court was required to enforce the order pursuant to the provisions of the Louisiana Children's Code.
However, even if the previous child support award was an original order of this state, the present Georgia order entered in August 1996 is enforceable in Louisiana. The trial court erred in holding otherwise. La. Ch. C. art. 1302.7 sets forth the rules for determining which child support award to honor in the instance that more than one award is entered. At the time the present order was filed for registration, that article provided:
A. If a proceeding is brought under this Chapter, and one or more child support orders have been issued in this or another state with regard to an obligor and a child, a court of this state shall apply the following rules in determining which order to recognize for purposes of exclusive jurisdiction:
(1) If only one court has issued a child support order, the order of that court must be recognized.
(2) If two or more courts have issued child support orders for the same obligor and child, and only one of the courts would have continuing jurisdiction under this Chapter, the order of that court must be recognized.
(3)If two or more courts have issued child support orders for the same obligor and child, and more than one of the courts would have continuing, exclusive jurisdiction under this Chapter, an order issued by a court in the current home state of the child must be recognized, but if an order has not been issued in the current home state of the child, the order most recently issued must be recognized.
(4) If two or more courts have issued child support orders for the same obligor and child, and none of the courts would have continuing, exclusive jurisdiction under this Chapter, the court of this state may issue a child support order, which must be recognized.
B. The court that has issued an order recognized under Paragraph A of this Article is the court having continuing, exclusive jurisdiction. [Emphasis supplied.]
The Louisiana Children's Code defines the concept of continuing, exclusive jurisdiction in La. Ch. C. art. 1302.5. That article provided in pertinent part:
A. A court of this state issuing a support order consistent with the laws of this state has continuing, exclusive jurisdiction over a child support order as follows:

*91 (1) As long as this state remains the residence of the obligor, the individual obligee, or the child for whose benefit the support order is issued.
(2) Until each individual party has filed written consent with the court of this state for a court of another state to modify the order and assume continuing, exclusive jurisdiction.
B. A court of this state issuing a child support order may not exercise its continuing jurisdiction to modify the order if the order has been modified by a court of another state pursuant to a substantially similar law.
C. If a child support order of this state is modified by a court of another state pursuant to a substantially similar law, a court of this state loses its continuing, exclusive jurisdiction with regard to prospective enforcement of the order issued in this state, and may only:
(1) Enforce the order that was modified as to amounts accruing before the modification.
(2) Enforce nonmodifiable aspects of that order.
(3) Provide other appropriate relief for violations of that order which occurred before the effective date of the modification.
D. A court of this state shall recognize the continuing, exclusive jurisdiction of a court of another state that issued a child support order pursuant to a substantially similar law....
Under this scheme, Georgia has continuing, exclusive jurisdiction over the matter because Mrs. McDuffy and the child are domiciled there. Also, pursuant to the stipulated child support order, this state may also have continuing, exclusive jurisdiction because Mr. McDuffy, the obligor, continues to reside in this state. Therefore, under the above quoted article, in the event that there are two child support orders from courts which each have continuing, exclusive jurisdiction, the order of the home state of the child prevails. Since the current home state of the child is Georgia, the prevailing award is that of the State of Georgia. Accordingly, under the facts presented, we find that the trial court erred in refusing to enforce the Georgia child support order for $311.00 per month against Mr. McDuffy. The Georgia order was properly enforceable in this state and Mr. McDuffy failed to carry his burden of proving a defense to the enforcement of that award.

CONCLUSION
For the reasons stated above, we reverse the judgment of the trial court refusing to enforce a foreign child support order from the State of Georgia against the defendant, Michael A. McDuffy. We hereby recognize and confirm, pursuant to La. Ch. C. art. 1306.8, the order from the Superior Court of Cobb County, State of Georgia, requiring the defendant, Michael A. McDuffy, to pay $311.00 per month in child support for his minor son, Michael A. McDuffy, Jr., pursuant to the terms of that judgment.
REVERSED AND RENDERED.
NOTES
[1] La. Acts 1995, No. 251 § 1, effective January 1, 1996, amended, reenacted and revised the former Children's Code provisions containing the Uniform Reciprocal Enforcement of Support Act (URESA), to provide for the Uniform Interstate Family Support Act.
[2] The provisions of the Louisiana Children's Code considered in this opinion were enacted by Acts 1995, No. 251, § 1, effective January 1, 1996. These provisions were in effect when this order was registered for enforcement in this state. The provisions were subsequently amended by Acts 1997, No. 1241 § 1, effective July 15, 1997. We make no ruling as to whether these provisions are substantive or procedural, but merely note that the changes do not affect the import of the provisions and do not change or alter the outcome of this opinion.